UNITED STORES REALTY CORPORATION

*v.*

JAMES J. ASEA et al.

[Decided May 14th, 1928.]

1. The statutory provision in the Uniform Fraudulent Conveyance act (*P. L. 1919 p. 502* § 9) entitling a creditor whose claim has matured to have a fraudulent conveyance set aside, embraces, by implication, creditors whose claims have not only matured but the validity of which has been established in a court of law, although such judgments are not impressed as a lien upon the land of the debtors.

2. Under our judicial system, the court of chancery is the only tribunal vested with the power to set aside and declare null and void a conveyance made in fraud of creditors.

3. A creditor who has recovered a judgment in a district court of this state is entitled to bring suit in the court of chancery to set aside a transfer of real estate by the judgment debtor as fraudulent, and this right is not affected by the fact that the creditor has not docketed his judgment in the common pleas court (as required by statute) to obtain a lien on the property conveyed.

4. The fact that a statutory provision is, to some extent, violative of our constitution, does not justify its condemnation *in toto* unless the different parts of the provision are so intimately connected with and dependent upon each other as to warrant the belief that the legislature intended them as a whole, and, that, if all could not be carried into effect, the legislature would not have passed the residue independently.

5. *P. L. 1919 p. 502* § 9, providing that a creditor whose claim has matured may have a conveyance fraudulent as to him set aside to the extent necessary to satisfy his claim, is valid as not infringing upon the jurisdiction of the law courts to hear and determine actions for debt and damage arising out of breach of contract, at least insofar as it covers claims of judgment creditors whose judgments have not been impressed as liens upon the debtor's land. The provision is constitutional, to the extent that it is called into question in this case.

6. The right of a creditor to have his district court judgment docketed in the court of common pleas and thus impress his judgment as a lien upon the lands of the judgment debtor is purely statutory and is not dependent upon any judicial action by a court of law.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Church.

*Mr. Nicholas S. Schloeder,* for the appellants.

*Messrs. Stein, McGlynn & Hannoch,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The complainant, United Stores Realty Corporation, having recovered a judgment in the district court of the second judicial district of Hudson county against the defendant James J. Asea, and having caused execution to be issued thereon, which was afterward returned unsatisfied, instituted the present proceeding in the court of chancery, the purpose of which was to have decreed as null and void as against its judgment a conveyance made by him to his wife, a co-defendant, through an intermediary, for which no consideration was paid, the ground upon which this relief is sought being that the transfer of title was in fraud of its rights as an existing creditor. The hearing resulted in a decree adjudging the conveyance to be fraudulent, null and void as against the complainant judgment creditor, and directing the issuing of execution against the land described therein and the sale thereof for the purpose of satisfying that judgment and the costs of the present suit.

From this decree the defendants James Asea and his wife have appealed, upon the ground that the present suit was prematurely brought—(1) because the complainant at that time had no lien upon the land conveyed by the husband to his wife, and (2) because the complainant had not exhausted its remedy at law prior to the filing of the bill. Both of these points are discussed in the appellants' brief under a single head, the contention being that, under the provision of our statute creating district courts, a judgment entered in such court is not a lien upon land owned by the defendant in the suit; that an execution issued upon such judgment can be satisfied only out of his personal estate; that, in order to subject the land of a defendant to the lien of a judgment recovered in the district court, it must be docketed in the court of

common pleas, and that, until the judgment becomes a lien upon the defendant's land, the court of chancery is without jurisdiction to entertain a suit instituted by a judgment creditor, the purpose of which is to obtain an adjudication that a conveyance of land made by his debtor to a third person without a consideration therefor is fraudulent and void as against him.

It is true, as contended on behalf of the appellants, that it has been held in our earlier decisions that the general rule was entirely settled that, in order to enable a creditor to challenge in the court of chancery a transfer of real estate made by his debtor, upon the ground of fraud, the creditor must have first obtained a lien upon the property. *Haston* v. *Castner, 31 N. J. Eq. 697, 698,* and cases cited. In the year 1919, however, the legislature of this state passed an act entitled "An act concerning fraudulent conveyances and to make uniform the law relating thereto" (*P. L. p. 500*), by the ninth section of which it is provided that "where a conveyance is fraudulent as to a creditor, such creditor, when his claim has matured * * * may have the conveyance set aside to the extent necessary to satisfy his claim." This statutory provision, we consider, embraces, by implication, creditors whose claims have not only matured, but the validity of which has been established by a judgment in a court of law, although such judgment is not impressed as a lien upon the land of the debtor. It is hardly necessary to state that the court of chancery, under our judicial system, is the only tribunal vested with power to set aside and declare null and void a conveyance made in fraud of creditors.

It has been suggested that the section of the statute which has been referred to violates our constitution because it impairs the jurisdiction of the courts of law created by that instrument by conferring upon the court of chancery power to hear and determine actions for debt and for damages arising out of a breach of contract, that power being necessary for the ascertainment of the validity of the creditor's claim and for determining the actual amount due on such claim, if it be found to be valid. If this question was involved in the determination of the present case, we would be inclined to con-

sider the suggestion a meritorious one to the extent indicated. But the fact that a statutory provision is, to some extent, violative of our constitution, does not justify its condemnation *in toto* unless the different parts of the provision are so intimately connected with and dependent upon each other as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not have passed the residue independently. *Johnson* v. *State, 59 N. J. Law 535; Hudspeth* v. *Swayze, 85 N. J. Law 592.* Bearing in mind the fundamental principle that courts will not declare a statute unconstitutional in every respect where the matter is at all doubtful, we consider that we should not condemn the provision of the statute so far as it is involved in the present case, for it does not seem to us that the different parts of the act are so intimately connected with and dependent upon the other as to justify a judicial declaration that the whole provision must stand or fall. Reaching this conclusion, and considering, as we have already indicated, that the statutory provision embraces, by implication, claims of creditors, the validity and amounts of which have been established by the judgments of courts of law, but which have not been impressed as liens upon lands of their respective debtors, we conclude that, to this extent, the power conferred upon the court of chancery does not infringe upon the jurisdiction of our law courts.

We do not overlook the fact that a party who has recovered a judgment in a district court may have it impressed as a lien upon the land of his debtor by having it docketed in the court of common pleas of the county; but this fact has no relevancy in the determination of the constitutional question under consideration. The creditors right to do this is purely statutory, and does not depend upon any judicial action by a court of law. He is entitled as a matter of right to have his judgment docketed by the clerk of the court of common pleas upon filing in the office of the latter a statement signed by the clerk of the district court, under the seal of that court, containing the name of the court, the names of the parties, the amount and date of the judgment, the date of issue and

return of the execution, and also an affidavit, made by himself or his attorney, that at the time of filing such statement a certain amount, not less than $10, is still due thereon. It is apparent from this recital of the statute (*Comp. Stat. p 2003 § 170*) that in conferring jurisdiction upon the court of chancery to entertain a bill of the present character by a creditor who holds a judgment recovered in a district court, although such judgment has not been docketed in the court of common pleas, it does not infringe upon any of the judicial powers vested in our courts of law.

The decree under review will be affirmed.

KALISCH, J. (dissenting).

My vote for reversal in this case is based upon the ground that the court of chancery was without jurisdiction to entertain the cause.

The bill filed is in the nature of a creditor's bill to enforce the collection of a judgment obtained by the complainant in the second judicial district court of the county of Hudson against the appellant James J. Asea, who at one time was the owner of certain real property which he and his wife had conveyed to one Mildred Hartman, and which property was reconveyed by the latter back to the said Ramza Asea, wife of the judgment debtor.

It is conceded that no further steps were taken by the creditor before filing its bill of complaint than to cause an execution to be issued out of the district court against the personal property of the defendant James J. Asea, which execution was returned unsatisfied. A judgment entered in a district court is not a lien on real estate, and it is undisputed in the case, that the creditor had no lien by virtue of his judgment on any real estate which was owned or had been owned by the judgment debtor at the time of the filing of the creditor's bill.

The bill was filed upon the theory that the conveyance made by the judgment debtor was a voluntary conveyance, and, therefore, fraudulent.

It is not denied that such a bill would not lie were it not for chapter 213 of the act of 1919, entitled "An act concerning

fraudulent conveyances, and to make uniform the law relating thereto," which, by section 9, provides: "Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person, except the purchaser for a fair consideration, without knowledge of the fraud at the time of the purchase, or one who had derived title immediately or mediately from such a purchaser (a) have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or (b) disregard the conveyance and attach or levy upon the property conveyed."

Article 10 of the state constitution, placitum 1, among other things, declares: "The several courts of law and equity, except as herein otherwise provided, shall continue with the like power and jurisdiction as if this constitution had not been adopted."

Article 6 of the constitution, section 1, placitum 1, declares: "The judicial power shall be vested in a court of errors and appeals in the last resort in all causes as heretofore; a court of chancery; a prerogative court; a supreme court." * * *

It is to be observed that the phrase "as heretofore" applies to the courts mentioned. Reading these two constitutional declarations together or separately, we are constrained to start in with the proposition that the court of chancery and the supreme court are vested with the judicial powers, as were exercised by these courts before the adoption of the constitution.

That the framers of our constitution clearly contemplated that the powers and jurisdiction of the courts of chancery and the courts of law shall be kept and exercised by these courts separately and distinctly from each other, and that such powers and jurisdiction were not to be curtailed or in anywise limited, extended or encroached upon by legislative enactment is strikingly manifested by article 4, section 7, placitum 10 of the constitution, which declares: "The legislature may vest in the circuit courts or courts of common pleas within the several counties in the state chancery powers,

so far as relates to the foreclosure of mortgages and sale of mortgaged premises."

The key, therefore, to what such powers and jurisdiction of the court of chancery were before the adoption of the constitution of 1844, must be sought for in the statutes and in the common law, as declared by judicial decisions, which prevailed prior to such adoption.

On behalf of the respondent it is urged that, by virtue of section 9 of the statute of 1919, the legislature made it unnecessary that there should be a judgment lien upon the real property of a defendant in order to entitle him to file a creditor's bill and have the conveyance set aside so far as his judgment was concerned.

A careful reading of the statute of 1919, *supra,* makes it plain that the statutory provision, so far as it leads to an abrogation of the fundmental requirements of a creditor's bill, which requirements were essential to give jurisdiction to the court of chancery, to entertain such a cause at common law, is clearly in violation of the powers and jurisdiction vested in the court of chancery as prescribed by the constitution.

Restricting my views to the facts of the instant case, namely, that the bill of complaint does not show that the respondent had a judgment which was a lien upon real estate, and further that he did not have an adequate remedy at law, both of which were essential averments in order to give a court of chancery jurisdiction at common law, it is clear to me that the court was without jurisdiction to entertain the bill and should have dismissed it on that ground.

In *Wales* v. *Lawrence, 36 N. J. Eq. 207,* that distinguished jurist, Vice-Chancellor Van Fleet (at *p. 209*) says: "It is a well established rule of equity jurisprudence that a judgment creditor is not entitled to the aid of a court of equity for the enforcement of this judgment, until he has exhausted his remedy at law. This is an indispensable preliminary, which he must show affirmatively to entitle himself to a footing in equity." Said Chancellor Green, in *Robert* v. *Hodges, 16 N. J. Eq. 299:* "Equity will not, of course, grant its aid to

enforce legal process. It must first appear that the legal remedy of the complainant is exhausted."

In *Bigelow Blue Stone Co., 27 N. J. Eq. 392,* Chancellor Runyon (at *p. 393*) says: "When a creditor comes into equity to reach the equitable interest of his debtor in land, he must show a judgment which would in case the legal title to the property were in the debtor, be a legal lien thereon and an execution returned unsatisfied. This will show that his remedy at law is exhausted, and will entitle him to the aid of equity. It is not necessary in such case to show a levy of an execution on the land which he seeks to recover. *Robert* v. *Hodges, supra; Dunham* v. *Cox, 10 N. J. Eq. 437; Cuyler* v. *Moreland, 6 Paige 273."*

If the provision of section 9 of the statute of 1919, *supra,* is to be read in the sense that it shall be no longer necessary that a judgment be a lien upon the land of the debtor in case the legal title to the property were in him, and no longer necessary that an execution should be issued upon such judgment, and that the same be returned unsatisfied, in order to give the court of chancery jurisdiction of a creditor's bill then it is clear to me that the provision is unconstitutional, for the obvious reason that the legislature was without power, under the constitution, to change or alter the fundamentals of the jurisdiction of the court of chancery, which fundamentals were established and existed before the adoption of the constitution of 1844.

A reading of the statute of 1919 makes it manifest that it is inimical, in some respects, to our judicial system, where law and equity are administered by separate tribunals, established by our constitution for that particular purpose.

The statute has patent earmarks, indicating that it was designed for only such states where law and equity are administered by the same tribunal, and that the statute was evidently copied from similar statutes existing in sister states, where law and equity are not made distinct matters, so far as the acquiring of jurisdiction by their courts is concerned.

Section 12 of the act provides: "This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of the state which enact it."

Section 13 provides: "This act may be cited as a Uniform Fraudulent Conveyance act."

Whether all the provisions of the statute were within constitutional authorization was apparently overlooked by the legislature in a hasty effort to make uniform the laws of this state, for otherwise it would not have consciously enacted section 9 and several other sections, the latter not being drawn into question here, which are clearly in violation of constitutional declarations.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, BLACK, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, HETFIELD, DEAR, JJ.   11.

*For reversal*—PARKER, KALISCH, KATZENBACH, KAYS, JJ.   4.